**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DEANNA R. LEDUC and TERRI TRIPP,** on behalf of the ACCT Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, <br><br>         **Plaintiffs,** <br><br>     v. <br><br> **MIGUEL PAREDES, PRUDENT FIDUCIARY SERVICES, LLC, CHRISTOPHER J. DEBBAS, JAMES R. GRIFFITHS, RUSSELL HUGHES, JOSEPH LEMBO, GREGORY S. CAMPBELL, and G.D. CAMPBELL ASSOCIATES, L.P.,** <br><br>         **Defendants.** | **Case No. 2:24-cv-05970-WB** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 2

    A.    Plaintiffs' Second Amended Complaint .................................................................. 2

    B.    Pre-Motion Discovery .............................................................................................. 3

    C.    Motion Practice ......................................................................................................... 3

    D.    Mediation and Settlement ........................................................................................ 3

III.  SUMMARY OF PROPOSED SETTLEMENT ..................................................... 4

    A.    The Proposed Settlement Class ............................................................................... 4

    B.    Benefits to the Settlement Class .............................................................................. 4

    C.    Notice and Administration ....................................................................................... 6

    D.    Service Award to the Named Plaintiffs and Attorneys' Fees and Expenses ....................... 7

    E.    Review by Independent Fiduciary .......................................................................... 8

    F.    Release of Claims ..................................................................................................... 8

    G.    Summary of Schedule ............................................................................................... 9

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............ 10

    A.    The Settlement is the Result of Good Faith, Arms-Length Negotiations ......................... 11

    B.    The Complexity, Expense, and Likely Duration of Litigation ......................................... 12

    C.    The Stage of Proceedings and the Amount of Discovery Completed .............................. 13

    D.    The Risks of Establishing Liability, Damages, and Maintaining a Class Action Through Trial 14

    E.    The Ability of Defendants to Withstand a Greater Judgment ........................................ 15

    F.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation ......................................................... 15

    G.    Effectiveness Of The Proposed Method Of Distributing Relief To The Class ................ 18

    H.    The Terms Of The Proposed Award Of Attorneys' Fees ................................................ 18

    I.    The Settlement Proposal Treats Class Members Equitably ........................................... 18

    J.    Agreements Made in Connection with the Settlement .................................................... 19

    K.    The Court Should Approve the Class Notice and Schedule a Fairness Hearing ............. 19

V.    THE COURT SHOULD CERTIFY A RULE 23 SETTLEMENT CLASS ..................... 20

    A.    Legal Standards for Class Certification ................................................................ 21

    B.    The Proposed Class Satisfies Rule 23(a)'s Requirements .......................................... 22

ii

1.    The numerosity requirement is satisfied because the Class is so numerous that joinder of all Class members is impracticable. ................................................................. 23

2.    The commonality requirement is satisfied because the SAC's overpayment allegations are common to all Settlement Class Members.................................................... 23

3.    The typicality requirement is satisfied because Plaintiffs' claims are identical to those of the Settlement Class Members. ................................................................. 25

4.    Plaintiffs are adequate Class representatives. ................................................ 26

C.    A Class Action May Be Maintained Under Rule 23(b)(1)................................... 27

1.    The proposed Class satisfies Rule 23(b)(1)(B) because the interests of absent class members would be disposed of or affected by individual adjudications. ........................... 28

2.    A class action also may be maintained under Rule 23(b)(1)(A). .................................. 29

D.    Plaintiffs Are Represented by Competent and Qualified Counsel................................... 29

CONCLUSION............................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alday v. Raytheon Co.*,
  619 F. Supp. 2d 726 (D. Ariz. 2008) ..........................................................................29

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................26, 29

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) ........................................................................................22

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................................15

*Chea v. Lite Star Esop Comm.*,
  No. 1:23-CV-00647-SAB, 2025 WL 2938836 (E.D. Cal. Oct. 16, 2025)............................17

*Chesemore v. Alliance Holdings, Inc.*,
  276 F.R.D. 506 (W.D. Wis. 2011) ..............................................................................22, 29

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015)........................................................................................23

*Cunningham v. Wawa, Inc.*,
  387 F. Supp. 3d 529 (E.D. Pa. 2019) ..........................................................................22, 24

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012)........................................................................................27

*Doe I v. Int'l Fin. Corp.*,
  No.17-1494-JFB-SRF, 2024 WL 4384970 (D. Del. Oct. 3, 2024)........................................12

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010).........................................................................................11

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434,444 (E.D. Pa. 2008) ...........................................................................14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)..........................................................................................15

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975).........................................................................................11

*Godfrey v. GreatBanc Tr. Co.*,
   2021 WL 679068 (N.D. Ill. Feb. 21, 2021) ...................................................22

*Hurtado v. Rainbow Disposal Co.*,
   2019 WL 1771797 (C.D. Cal. Apr. 22, 2019) ........................................22, 25, 26

*In re Ikon Office Solutions, Inc.*,
   191 F.R.D. 457 (E.D. Pa. 2000)...................................................................24, 29

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).........................................................................17

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008)........................................................................28

*Kindle v. Dejana*,
   315 F.R.D. 7 (E.D.N.Y. 2016) ............................................................................24

*Knight v. Lavine*,
   2013 WL 427880 (E.D. Va. Feb. 4, 2013) .........................................................29

*Larson v. AT&T Mobility LLC*,
   687 F.3d 109 (3d Cir. 2012)................................................................................27

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   2017 WL 5664850 (S.D.N.Y. Nov. 27, 2017).....................................................29

*Lively v. Dynegy, Inc.*,
   No. 05-CV-00063-MJR, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ...................26

*Marcus v. BMW of North America, LLC*,
   687 F.3d 583 (3d Cir. 2012)..........................................................................21, 23

*McLachlan v. Bd. of Trs. of Elevator Constructors Annuity & 401(k) Ret. Plan*,
   No. CV 22-4115, 2025 WL 1116533 (E.D. Pa. Apr. 15, 2025) ...........................16

*Moon v. E.I. du Pont de Nemours & Co.*,
   2023 WL 1765565 (D. Del. Feb. 3, 2023) ..........................................................29

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014)..........................................................................11

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016)..........................................................................25, 26

*Neil v. Zell*,
   275 F.R.D. 256 (N.D. Ill. 2011)....................................................................24, 29

v

*New Directions Treatment Servs. v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007)......................................................................27

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)......................................................................23

*Ninivaggi v. Univ. of Delaware*,
    2023 WL 2734343 (D. Del. Mar. 31, 2023) ............................................23

*Nistra v. Reliance Tr. Co.*,
    No. 16 C 4773, 2018 WL 835341 (N.D. Ill. Feb. 13, 2018)............................24, 29

*O'Hern v. Vida Longevity Fund, LP*,
    No. 21-CV-402-SRF, 2023 WL 3204044 (D. Del. May 2, 2023) .........................17

*Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan
    v.Wilmington Tr. NA*,
    72 F.4th 499 (3d Cir.) ..............................................................................22

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..................................................................................28

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ...................................................................16

*Perez v. First Bankers Tr. Servs., Inc.*,
    No. 12-4450, 2017 WL 1232527 (D.N.J. Mar. 31, 2017) ........................16

*Pfeifer v. Wawa, Inc.*,
    2018 WL 2057466 (E.D. Pa. May 1, 2018) .......................................14, 26

*In re Processed Egg Prod. Antitrust Litig.*,
    No. 08-MD-2002, 2016 WL 3584632 (E.D. Pa. June 30, 2016) .............15

*In re Prudential Ins. Co of Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).....................................................................16

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015).....................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................17

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009).....................................................................25

*Schuler v. Meds. Co.*,
    No. 14-CV-1149, 2016 WL 3457218 (D.N.J. June 24, 2016)..................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................22

*Sheinberg v. Sorenson*,
   606 F.3d 130 (3d Cir. 2010) ....................................................30

*Smith v. Greatbanc Tr. Co. et al.*,
   No. 1:20-CV-02350, Dkt 163 (N.D. Ill. Aug. 23, 2023) ..........18

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ....................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................23

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ..............................................11, 25

*In re Wilmington Tr. Sec. Litig.*,
   No. 10-CV-0990-ER, 2018 WL 6046452 (D. Del. Nov. 19, 2018) ............................14, 19, 20

*In re YRC Worldwide, Inc. ERISA Litig.*,
   2011 WL 1303367 (D. Kan. Apr. 6, 2011) ..............................22

**Statutes**

29 U.S.C. § 1104(a) ..........................................................................2

29 U.S.C. § 1105(a) ..........................................................................2

29 U.S.C. § 1106(a) ..........................................................................2

29 U.S.C. § 1132(a)(2) ............................................................. *passim*

**Other Authorities**

68 Fed. Reg. 75,632 (Dec. 31, 2003) ..............................................8

75 Fed. Reg. 33,830 (June 15, 2010) ..............................................8

Fed. R. Civ. P. 23 ..................................................................... *passim*

Plaintiffs Deanna LeDuc and Terri Tripp ("Plaintiffs"), individually and on behalf of a class of individuals similarly situated, have filed an unopposed motion for an order (1) preliminarily approving a settlement agreement between Plaintiffs and Defendants Miguel Paredes and Prudent Fiduciary Services, LLC ("Trustee Defendants"), as well as Defendants Christopher Debbas, James Griffiths, Russell Hughes, Joseph Lembo, Gregory Campbell, and G.D. Campbell Associates, L.P. ("ACCT Defendants," and together with Trustee Defendants, the "Defendants"); (2) certifying a class for settlement purposes ("Settlement Class"), and appointing Plaintiffs' Counsel as Class Counsel and Plaintiffs as Class Representatives; (3) approving notice to the Settlement Class; (4) appointing RG2 Claims Administration, LLC as the Settlement Administrator; and (5) setting a date for a fairness hearing. In support thereof, Plaintiffs state as follows:

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, ("ERISA") for consideration totaling $8.75 million ("Settlement Amount") for the benefit of the Settlement Class Members and the ACCT Holdings, Inc. Employee Stock Ownership Plan ("ESOP" or "Plan"). The Settlement Amount has two components: (1) a $5.75 million reduction in the balance of outstanding promissory notes issued by ACCT to certain of the ACCT Defendants, which will increase the equity value of ACCT, and thereby increase the value of the Plan accounts of those Settlement Class Members who are current participants of the Plan; and (2) cash payments by the ACCT Defendants totaling $3 million ("Settlement"). The parties memorialized their Settlement in an agreement dated December 30, 2025 ("Settlement Agreement") (attached as Ex. 1). Because the Settlement Agreement satisfies all the criteria for preliminary approval and provides a good

1

result for the Settlement Class, and because the proposed Settlement Class meets all the criteria for conditional certification, Plaintiffs request that the Court grant this unopposed motion.

## II.    BACKGROUND

### A.    Plaintiffs' Second Amended Complaint

Named Plaintiffs are participants in the ESOP and former employees of the ESOP's sponsor, ACCT Holdings, Inc. ("ACCT" or "Company"). SAC ¶¶ 2, 37. The original Complaint was filed on November 7, 2024. (Dkt. 1). After this case was consolidated with another one concerning the same facts, Plaintiffs filed a Second Amended Complaint ("SAC") on March 28, 2025. (Dkt. No. 56).

The SAC alleges the Trustee Defendants caused the ESOP to acquire 100% of ACCT's issued and outstanding common stock in 2021 from the ACCT Defendants for $320 million ("ESOP Transaction"), an amount they allege exceeded the stock's fair market value. SAC ¶¶ 5, 7. In so doing, the SAC alleges that the Trustee Defendants violated ERISA's prohibition on transactions between ERISA plans and plan insiders (known as "parties in interest"), 29 U.S.C. § 1106(a) (Count I), and the statute's fiduciary standards, 29 U.S.C. § 1104(a) (Count II). *Id.* ¶¶ 95-113. The SAC also alleges that all six of the ACCT Defendants knowingly participated in the Trustee Defendants' § 1106(a) violations (Count III). *Id.* ¶¶ 114-124. And the SAC further alleges that five of the six ACCT Defendants—as members of ACCT's Board of Directors who appointed the Trustee Defendants—breached their fiduciary duties as defined in 29 U.S.C. § 1104(a) by failing to monitor the Trustee Defendants (Count IV), and are liable as co-fiduciaries to the Trustee Defendants under 29 U.S.C. § 1105(a) (Count V). *Id.* ¶¶ 125-144.

Defendants deny any wrongdoing or liability associated with the ESOP Transaction and the allegations in this lawsuit, and have vigorously defended themselves throughout.

### B.    Pre-Motion Discovery

Though formal fact discovery was just beginning when the Parties reached a settlement

agreement, the Parties engaged in an early-stage discovery period pursuant to the Court's

Scheduling Order. That Order authorized a "Phase 1" discovery period in which the Parties

would "exchange initial documents to facilitate amendment and merits evaluation" and "conduct

discovery pertaining to any potential Motions to Compel Arbitration." Dkt. No. 37 at 1. Pursuant

to those directives, Defendants produced documents to Plaintiffs totaling approximately 1,700

pages. *See* Declaration of Gregory Y. Porter ("Porter Dec.") ¶ 6.

### C.    Motion Practice

Both the Trustee Defendants and ACCT Defendants filed motions to dismiss on April 30,

2025 (Dkt. Nos. 60 & 61), which Plaintiffs opposed (Dkt. Nos. 68 & 69). Defendants also filed a

motion to strike Plaintiffs' use in their opposition brief of the valuation report the Trustee

Defendants relied on in connection with the ESOP Transaction. (Dkt. No. 73). Plaintiffs filed an

opposition to that strike motion (Dkt. No. 77), and Defendants subsequently filed a reply (Dkt.

No. 78). The Court has yet to rule on Defendants' motions to dismiss or their motion to strike.

### D.    Mediation and Settlement

The Parties held a full-day mediation with JAMS mediator Stephen Lucke on July 16,

2025, shortly after briefing on the motion to dismiss was complete. Porter Dec. ¶ 9. In advance

of the mediation, the Parties submitted statements to the mediator laying out their positions and

responding to the mediator's questions. *Id.* The parties also separately provided the mediator

with confidential statements assessing the strengths and weaknesses of their respective claims

and defenses. *Id*. Though unable to resolve this matter at the mediation on July 16, the Parties

continued talking with the mediator in the weeks that followed. Those talks continued through

September 10, 2025, when the Parties reached a settlement in principle. The Parties signed the Settlement Agreement on December 30, 2025. *Id.*

### III.    SUMMARY OF PROPOSED SETTLEMENT

The material terms of the Settlement Agreement are as follows:

### A.    The Proposed Settlement Class

The proposed Settlement covers all vested Plan participants and their beneficiaries during the period running December 22, 2021 to December 31, 2025 ("Class Period"). Excluded from the Settlement Class are the shareholders who sold their ACCT stock to the ESOP, directly or indirectly, and their immediate families; the directors of ACCT during the ESOP Transaction and their immediate families; and legal representatives, successors, and assigns of any such excluded persons. Based on class data obtained from the ACCT Defendants, there are at least 3000 Settlement Class Members. Porter Dec. ¶ 18.

### B.    Benefits to the Settlement Class

The Settlement Amount is divided between two forms of consideration for the benefit of the Settlement Class Members. First, the ACCT Defendants—within 60 days of the Court entering a Final Approval Order—will cause promissory notices they received from ACCT in connection with the Transaction ("Seller Notes") to be reduced by an aggregate amount of $5.75 million ("Seller Note Reduction"). Settlement Agmt. § 7.4. Because the Seller Notes are debt on ACCT's balance sheet, and because company debt reduces its equity value, the Seller Notes reduce the value of the ESOP's ACCT stock. Accordingly, the Seller Note Reduction will increase the value of ACCT stock, which will inure to the benefit of the Settlement Class Members that maintain Plan accounts by increasing the value of their stock. Simultaneous to the Seller Note Reduction, the ACCT Defendants will also cause a corresponding reduction in the

4

promissory note the ESOP issued to ACCT in connection with the Transaction ("ESOP Note"),

reducing the ESOP's liability to the Company by $5.75 million.

Second, the ACCT Defendants have agreed to a pay a total of $3 million in cash into a

fund maintained for purposes of holding settlement amounts ("Settlement Fund Account") on the

following payment schedule ("Cash Payments"):

- $375,000 paid no later than 10 days after the Court enters a Preliminary Approval Order;

- $375,000 paid no later than 10 days after the Court enters a Final Approval Order;

- $750,000 paid no later than 90 days after the Court enters a Final Approval Order;

- $750,000 paid no later than 180 days after the Court enters a Final Approval Order;

- $750,000 paid no later than 270 days after the Court enters a Final Approval Order.

Settlement Agmt. §§ 7.2-7.3, 7.5-7.7.

The amount remaining in the Settlement Fund Account after the payment of any court-

awarded attorneys' fees and expenses, class representative service awards, settlement

administration expenses, and the fee of the Independent Fiduciary retained to approve the

Settlement on behalf of the ESOP are the "Net Proceeds." Because some of the Settlement Class

Members sold some or all of their ACCT shares during the Class Period ("Cashed-Out Class

Members")—and because those cashed-out shares will not benefit from the Seller Note

Reduction—a portion of the Net Proceeds will first be set aside for Cashed-Out Class Members

for their cashed-out shares in an amount commensurate with the benefit conferred on existing

shares in the Plan by the Seller Note Reduction. Specifically, because the $5.75 million Seller

Note Reduction translates to roughly $.33 of increased value to each of the 17,386,919 shares in

5

the Plan, Cashed-Out Class Members will be paid $.33 for each of their cashed-out shares plus their pro rata share of the remainder of the Net Proceeds based on their "Entitlement Percentage." Plan of Allocation ¶ 1(a), (d) (Ex. 2 hereto). A Class Member's Entitlement Percentage—including for Cashed-Out Class Members and those that still participate in the Plan—will be determined by adding the Class Member's vested ACCT shares plus any vested shares the Class Member previously cashed out, and dividing that total by the overall number of vested ACCT shares plus the overall number of vested shares previously cashed out. *Id.* ¶ 1(b). Except for settlement administration expenses and any court-authorized service awards, no distributions or payments from the Settlement Fund will be made until all Cash Payments have been paid into the Settlement Fund. Settlement Agmt. § 8.2.3.

  **C.**  **Notice and Administration**

  At least 90 days before the date set by the Court for a Fairness Hearing, Plaintiffs' counsel shall cause the proposed Settlement Administrator, RG2 Claims Administration, LLC ("RG2"), to disseminate a notice to the Settlement Class Members, and post it on a website, apprising them of the Settlement Agreement ("Class Notice"). The proposed Class Notice (attached hereto as Ex. 3) informs Settlement Class Members about the nature of this lawsuit, the terms of the Settlement, and the procedures for entering an appearance to be heard or object to the Settlement. In addition to the Class Notice, the Settlement Administrator will also post on a website made available to Class Members other key documents associated with this lawsuit and the Settlement, including the SAC, the Settlement Agreement, preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final Approval.

  The Settlement Administrator shall be provided the names and last known mailing addresses of the Settlement Class Members within 10 days of the Court's entry of a Preliminary

Approval Order. Settlement Agmt. § 2.2.3. The ACCT Defendants shall also cause the recordkeeper or third-party administrator for the ESOP to provide to the Settlement Administrator: (1) the number of vested shares of ACCT stock allocated to the ESOP accounts of Class Members as of December 31, 2025 (end of class period), and (2) if the Settlement Class Member received a prior distribution of all or a portion of the Settlement Class Member's vested shares, the number of vested shares redeemed in the distribution. Settlement Agmt. § 2.2.3.

If the Court enters a Final Approval Order, and after Defendants complete the Cash Payments, the Settlement Administrator shall implement the Plan of Allocation. Specifically, the Settlement Administrator shall distribute the "Net Proceeds"—*i.e.*, the amounts remaining in the Settlement Fund Account after deducting court-approved expenses and fees—per the procedure described in Sec. III(B) above. *See* Plan of Allocation ¶ 1 (Ex. 2 hereto).

The Settlement Administrator shall distribute payments to Class Members pursuant to the Plan of Allocation in the following form: (1) Class Members with an active ESOP account will receive a cash allocation to their ESOP account to be deposited into a money market fund in the ESOP (to be established by the trustee of the ESOP); (2) Class Members without an active ESOP account may elect their payment (a) as a deposit into a qualified retirement account or (b) directly to that Class Member by check. *Id.* ¶ 2. If any checks remain uncashed after 120 days, and the Settlement Administrator has made reasonable efforts to notify the recipients of these checks, the Settlement Administrator shall re-distribute the total amount of any uncashed checks pro-rata to the remaining Settlement Class Members that maintain an account in the Plan. *Id.* ¶ 3.

## D.    Service Award to the Named Plaintiffs and Attorneys' Fees and Expenses

Subject to the Court's entry of a Final Approval Order, Class Counsel's fees and litigation expenses, and the Service Award to Plaintiffs Deanna LeDuc and Terri Tripp, shall be paid from

the Settlement Fund Account. Plaintiffs shall petition the Court for a Service Award not to exceed
$2,500 for each of the named Plaintiffs, in recognition of their service to the Plan. Class Counsel
will also petition the Court for an award of attorneys' fees not to exceed 15% of the Settlement
Amount, plus litigation expenses.

> ### E.    Review by Independent Fiduciary

The Settlement is contingent upon approval by an Independent Fiduciary in accordance
with Prohibited Transaction Exemption ("PTE") 2003-39 promulgated by the Department of
Labor. *See* Settlement Agmt. § 2.3; *see also* PTE 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003),
as amended, 75 Fed. Reg. 33,830 (June 15, 2010). PTE 2003-39 applies to ERISA settlements
that release claims brought on behalf of an ERISA plan and requires that an independent
fiduciary evaluate the settlements and determine that it is "reasonable in light of the Plan's
likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone."
PTE 2003-39 at 75,636. The ACCT Defendants will select and retain an Independent Fiduciary,
subject to Plaintiffs' approval, to evaluate the reasonableness of the Settlement. The Independent
Fiduciary shall notify Counsel for the Parties of its determination no later than 30 calendar days
before the Fairness Hearing. If the Settlement becomes Final, the fees and costs of the
Independent Fiduciary will be paid out of the Settlement Amount. *See* Settlement Agmt. § 2.3.

> ### F.    Release of Claims

In exchange for the Settlement Amount and satisfaction of the other conditions required
of Defendants by the Settlement Agreement, Plaintiffs and the proposed Settlement Class will
release the "Defendant Releasees" (as defined in the Settlement Agreement) from any and all
"Released Claims" (as defined in the Settlement Agreement), which "shall include any and all
claims of any nature whatsoever (including claims for any and all losses, damages, unjust

enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration,

contribution, indemnification, or any other type or nature of legal or equitable relief), whether

against Releasees in their capacity as individuals, corporate entities, or in their capacities as

fiduciaries, whether known or unknown, in law or equity, which were or could have been

asserted in the Lawsuit arising from the facts and claims alleged in the Second Amended

Complaint. Settlement Agmt. § 3.3.

### G.    Summary of Schedule

The proposed schedule for the effectuation of this Settlement Agreement and Plan of

Allocation is set out below:

| Event | Date |
|---|---|
| Motion for Preliminary Approval | January 5, 2026 |
| CAFA Notices issued | Within 10 days of Plaintiffs filing the Settlement Agreement with the Court |
| Preliminary Approval Hearing (if the Court desires) | At the Court's discretion (though the Parties request that any hearing be held within 30 days of the filing of the Preliminary Approval Motion). |
| Transmission of Settlement Class list to Settlement Administrator | No later than 10 days after the Court enters a Preliminary Approval Order |
| Mailing of Class Notice | At least 90 days before the Fairness Hearing |
| Motion for Final Approval of Settlement | No later than 45 days before the Fairness Hearing |
| Motion for award of attorneys' fees and Service Award | No later than 45 days before the Fairness Hearing |
| Objections to Settlement and notice of intent to appear at Fairness Hearing | No later than 21 days before the Fairness Hearing |
| Response to Objections | No later than 10 days before the Fairness Hearing |
| Fairness Hearing | TBD (but at least 100 days after the date Plaintiffs file the Settlement Agreement with the Court) |

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

A class action cannot be settled without court approval and notice to the class, which entails a two-stage process: (1) preliminary approval and notice to the class of the proposed settlement; and (2) final approval following a fairness hearing in which the court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

At the preliminary-approval stage, the court must determine whether the settlement justifies giving notice of the settlement to the class, which is informed by the following factors:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In tandem with Rule 23(e), courts within the Third Circuit evaluate class action settlements under the following nine factors outlined in *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975), to the extent they are applicable: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of

the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004) (*citing Girsh*).[1]

There is a strong presumption in favor of voluntary settlement agreements that promote the amicable resolution of disputes, conserve judicial resources, and benefit the parties by avoiding the costs and risks of a lengthy and complex trial. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010). "This presumption is especially strong in class actions." *Id*.

### A.    The Settlement is the Result of Good Faith, Arms-Length Negotiations

As noted, among the criteria for preliminary approval is that the settlement proposal be negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Whether a settlement arises from arm's length negotiations is a key factor in deciding whether to grant preliminary approval." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." *Doe I v. Int'l Fin. Corp.*, No.17-1494-JFB-SRF, 2024 WL 4384970, at *7 (D. Del. Oct. 3, 2024).

Here, the Parties engaged in a full-day mediation with experienced JAMS mediator Stephen Lucke on July 16, 2025. Porter Dec. ¶ 9. In advance of the mediation, the Parties provided the mediator with written statements outlining their views on liability and damages, as well as separate confidential written statements laying out the strengths and weaknesses of their cases. *Id.* Although the Parties were unable to come to terms on the day of the mediation itself,

---

[1] Since Class Notice has not yet been sent, the reaction of the Settlement Class to the settlement (the second *Girsh* factor) cannot be evaluated at this stage.

they continued discussions in the following weeks. *Id*. It was not until September 10, 2025, after

weeks of back-and-forth communications, that the Parties agreed in principle to the key terms

contained in the Settlement Agreement. *Id.* The Parties continued to negotiate over remaining

terms until December 30, 2025, when they signed the Settlement Agreement. *Id.* Throughout the

settlement discussion process, the Parties vigorously debated the merits of Plaintiffs' claims and

Defendants' theories of defense. And, as discussed below, given the benefit of the early-stage

discovery period, the Parties entered the negotiations with a much more thorough understanding

of the issues that would be presented at trial than is typical at this juncture.

Because the proposed Settlement is the result of good faith, arm's-length negotiations by

well-informed and experienced counsel, Rule 23(e)(2)(B) is satisfied.

### B.    The Complexity, Expense, and Likely Duration of Litigation

Addressing the first *Girsh* factor (complexity, expense, and likely duration of litigation),

as well as Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and an appeal), the Parties have

different views about Defendants' actions, their potential liability, and the likely outcome of the

litigation. Plaintiffs' core allegations regarding the ESOP Transaction rest on facts that are

strongly contested by Defendants; indeed, both sets of Defendants moved to dismiss the SAC in

its entirety. In so doing, Defendants pointed to evidence that countered Plaintiffs' central

critiques, including ACCT's strong financial performance following the ESOP transaction and

third-party purchase offers ACCT received prior to the ESOP Transaction, which, in their view,

supported the conclusion that Defendants have no liability. If the lawsuit were to proceed,

Plaintiffs would have to overcome these and other defenses and arguments. These fact-intensive

inquiries would have led to a battle of experts and conflicting evidence and testimony.

Proceeding to full fact and expert discovery, summary judgment, class certification, and ultimately trial also would have taken a significant amount of time and attorney resources. Indeed, under the Scheduling Order, summary judgment briefing would not be complete until November 11, 2026. Dkt. No. 37 at 2. Regardless of whether this case was decided at summary judgment or after a trial, there likely would have been appeals that followed, further delaying resolution and causing more expense. The proposed Settlement—which includes $3 million in cash and a $5.75 million reduction in debt held by ACCT and the ESOP—is a good result for the Settlement Class given the likely duration and uncertainty associated with further litigation.

### C.    The Stage of Proceedings and the Amount of Discovery Completed

Regarding the third *Girsh* factor (stage of the proceedings and the amount of discovery completed), though the Parties reached a Settlement in principle at a relatively early stage of the case—while motions to dismiss were pending, and just as formal fact discovery was getting underway—the Parties are nevertheless well informed about the facts of the case due to an early-stage discovery period conducted pursuant to the Court's Scheduling Order.

That Order authorized a "Phase 1" discovery period in which the Parties would "exchange initial documents to facilitate amendment and merits evaluation" and "conduct discovery pertaining to any potential Motions to Compel Arbitration." Dkt. No. 37 at 1. Pursuant to those directives, Defendants produced a number of documents to Plaintiffs—approximately 1,700 pages in total. Porter Dec. ¶ 6. Included among those documents were some of the central documents relevant to this (and any ESOP) case: the valuation report relied on by the Trustee Defendants in the lead up to the ESOP Transaction, the stock purchase agreement for the ESOP Transaction, and the Trustee Defendants' notes from various due diligence meetings prior to the ESOP Transaction. *Id.* As a result of this production, Class Counsel had significant (and unusual)

13

insight at an early stage on the central issues in the case. Further assisting Class Counsel was a valuation expert who provided a preliminary analysis to Class Counsel on his opinion of the fair market value of the ACCT stock purchased by the ESOP and damages. *Id.* ¶ 8.

"Thus, the parties have conducted sufficient discovery to estimate the merit and value of the Plaintiffs' case against [Defendants] and reach a reasonable settlement." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434,444 (E.D. Pa. 2008); *see Pfeifer v. Wawa, Inc.*, Civ. No. 16-497, 2018 WL 2057466, at \*6 (E.D. Pa. May 1, 2018) (finding "substantial discovery" where documents related to the merits and the Class's potential recovery had been produced, and plaintiff had hired valuation experts). This discovery has allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage. The third *Girsh* factor supports approval of the Settlement.

>   D.   **The Risks of Establishing Liability, Damages, and Maintaining a Class Action Through Trial**

The fourth, fifth, and sixth *Girsh* factors, and Rule 23(e)(2)(C)(i), account for the risks of establishing liability, establishing damages, and maintaining certification throughout the trial. These factors "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 6046452, at \*5 (D. Del. Nov. 19, 2018) (quoting *In re Prudential Ins. Co of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). As to damages, this factor "attempts to measure the expected value of litigating the action

rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238–39 (3d Cir. 2001) (*quoting Gen. Motors*, 55 F.3d at 816).

Here, Plaintiffs faced significant risks. As discussed above in Section IV(B), the Parties have different views about the likely outcome of the litigation and the fair market value of ACCT stock at the time of the ESOP Transaction. Defendants contend that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, contend that the Plan incurred significant financial loss through its overpayment for ACCT shares. That core dispute had not been resolved at the time the Parties reached the Settlement, and the uncertainty put all Parties at great risk.

Further, counsel for the Parties, having litigated similar issues extensively in the past, *see, e.g.*, Porter Dec. ¶ 11, were fully aware of these risks and the possible outcomes, and the Parties were able to reach a settlement that balanced those risks.

### E.    The Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor concerns the defendant's ability to withstand a greater judgment. This factor did not enter into the Parties' negotiations. Nonetheless, the balance of other factors still supports approval of this Settlement. *See In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement.").

### F.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth *Girsh* factors and Rule 23(e)(2)(C)(i)-(iv) assess the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of

litigation. These factors weigh "the present value of the damages plaintiffs would likely recover

if successful, appropriately discounted for the risk of not prevailing, . . . compared with the

amount of the proposed settlement." *Prudential*, 148 F.3d at 322. "[I]n conducting the analysis,

the court must guard against demanding too large a settlement based on its view of the merits of

the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange

for certainty and resolution." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

In cases alleging that a trustee violated ERISA by causing an ESOP to pay too much for

the stock of a privately held company, courts have held that the measure of loss is the difference

between what the plan paid for the stock and what the stock was worth at the time of the

transaction. *See Perez v. Bruister*, 823 F.3d 250, 270-72 (5th Cir. 2016); *Perez v. First Bankers*

*Trust Servs., Inc.*, No. 12-4450, 2017 WL 1232527, at *81 (D.N.J. Mar. 31, 2017). As noted,

Plaintiffs commissioned a preliminary damages estimate from their retained valuation expert,

who estimated that, in his opinion, the ESOP overpaid by between $34 million and $77 million.

Porter Dec. ¶ 8. The $8.75 million in total consideration associated with the proposed Settlement

represents 11.4% of the high end of that that estimated damages range and 25.7% of the low end.

The recovery reflected in the Settlement Agreement is reasonable in light of the potential

damages. *See, e.g.*, *McLachlan v. Bd. of Trs. of Elevator Constructors Annuity & 401(k) Ret.*

*Plan*, No. CV 22-4115, 2025 WL 1116533, at *6 (E.D. Pa. Apr. 15, 2025) (approving a 5.11%

recovery "based on Plaintiffs' estimate of maximum damages" as reasonable where settlement

was "negotiated at arm's length with the hands-on involvement of an experienced mediator"

given "probability that proceeding to trial would have yielded no recovery."); *O'Hern v. Vida*

*Longevity Fund, LP*, No. 21-CV-402-SRF, 2023 WL 3204044, at *6 (D. Del. May 2, 2023)

(approving a settlement which would "result in recovery of about 5.4%" of potential losses,

16

which was "in line with recoveries in comparable settlement agreements approved by courts."); *Schuler v. Meds. Co.*, No. 14-CV-1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (finding recovery of 4.0% of estimated damages fell within the range of reasonableness); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166 (E.D. Pa. 2000) (approving 5.2% to 8.7% recovery "in light of the strength of the claims"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

While the recovery includes both cash and a reduction in ACCT's debt (the Seller Note Reduction), the latter directly benefits the ESOP and each share of ACCT stock it holds. The ESOP Transaction was financed by the ESOP's sponsor (ACCT), including through promissory notes (the Seller Notes) issued to the ACCT Defendants. Those Seller Notes are a component of ACCT's debt, and thus reduce the equity value of ACCT stock. As a result, the $5.75 million Seller Note Reduction increases the equity value of ACCT stock held by the ESOP. That is a direct benefit to the Plan and its participants, and serves to correct one of the effects of the alleged overpayment (namely, the increased debt taken on by ACCT). That benefit is why other courts have approved ESOP settlements that include debt reduction as a component of the recovery. *See, e.g., Chea v. Lite Star Esop Comm.,* No. 1:23-CV-00647-SAB, 2025 WL 2938836 (E.D. Cal. Oct. 16, 2025) (preliminarily approving settlement for $1.5 million in cash and $1 million in debt reduction); *Smith v. Greatbanc Tr. Co. et al.*, No. 1:20-CV-02350, Dkt. 163 (N.D. Ill. Aug. 23, 2023) (finally approving settlement for $15 million in debt reduction and $2.5 million in cash, among other consideration). Given the potential defenses and uncertainty inherent in any dispute about business valuation and the attendant risk of recovering nothing for Plan participants, the proposed Settlement represents a good result for the Settlement Class.

**G.     Effectiveness Of The Proposed Method Of Distributing Relief To The Class**

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing any class member claims. Here, the Settlement Agreement contemplates certain of the Defendants directing ACCT to provide the Settlement Administrator with the names and last known addresses of the Settlement Class Members. Settlement Agmt. § 2.2.3. Certain of the ACCT Defendants shall also cause the recordkeeper or third-party administrator for the ESOP to provide to the Settlement Administrator (1) the number of vested shares of ACCT stock allocated to the ESOP accounts of Settlement Class Members and (2) if the Class Member received a prior distribution of all or a portion of their account balance, the number of shares of ACCT stock redeemed in the distribution. *Id.* The Settlement Administrator will use that information to make distributions to Settlement Class Members in accordance with the Plan of Allocation. No claim forms are required. This method of distributing relief is both effective and efficient.

**H.     The Terms Of The Proposed Award Of Attorneys' Fees**

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(D), Plaintiffs' counsel will file an application seeking an award of attorneys' fees, not to exceed 15% of the Settlement Amount, plus reimbursement of litigation expenses.

**I.     The Settlement Proposal Treats Class Members Equitably**

Under Rule 23(e)(2)(D), the court must consider whether the settlement proposal treats class members equitably relative to each other. As noted in Section III(C) above, Class Members who are current participants in the Plan will all benefit from the Seller Note Reduction, which will increase the value of ACCT stock. *See* Settlement Agmt. § 7.4. Because the shares already redeemed by the Cashed-Out Class Members will not benefit from the Seller Note Reduction, the

Cashed-Out Class Members will receive $.33 per share in cash payments for each share cashed out (derived by taking $5.75 million and dividing it by all 17,386,919 ACCT shares held by the Plan, which is the 100% owner of ACCT). All Class Members (including the Cashed-Out Class Members) will then share pro rata in the Net Proceeds. As a result, the proposed Settlement has no obvious deficiencies such as preferential treatment to a portion of the Class.

**J.     Agreements Made in Connection with the Settlement**

Pursuant to Rule 23(e)(3), the Parties have entered a Settlement Agreement in connection with the Settlement. Class Counsel also has agreements with other co-counsel (defined in the Settlement Agreement as "Liaison Counsel").

**K.     The Court Should Approve the Class Notice and Schedule a Fairness Hearing**

Pursuant to Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement, voluntary dismissal, or compromise]." Fed. R. Civ. P. 23(e)(1). District courts have discretion as to "appropriate notice" for a class certified under Rule 23(b)(1) or (b)(2). Fed. R. Civ. P. 23(c)(2)(A). Notice to class members must "apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 6046452, at *4 (quoting *Prudential*, 148 F.3d at 327). "To meet this standard, notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors maybe heard." *Id*. at *3 (quotation omitted). In addition, Rule 23(e) gives the district court discretion as to the manner of the notice. Fed. R. Civ. P. 23(e)(1).

As described in Sections III(C) above, the Parties have agreed, subject to Court approval, to a Class Notice that provides individual notice to Settlement Class Members. The Class Notice, which is attached hereto as Exhibit 3, will be sent by mail to each Settlement Class Member no later than 90 days prior to the Fairness Hearing. The proposed Class Notice describes in plain English: (i) the Settlement's terms and operation; (ii) the nature and extent of the released claims; (iii) the procedure and timing for objecting to the Settlement; and (iv) the date and place for the Fairness Hearing. Plaintiffs request that the Court approve RG2 as Settlement Administrator. RG2 has extensive experience in the administration of settlements of this type. *See* Ex. B to Porter Dec.

Finally, Plaintiffs request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion for an award of reasonable attorneys' fees and expenses, and Service Award to Plaintiffs, as set forth in the accompanying proposed Order.

## V.    THE COURT SHOULD CERTIFY A RULE 23 SETTLEMENT CLASS

Plaintiffs also seek to certify a class for settlement purposes pursuant to Fed. R. Civ. P. 23. The proposed Class is defined as: "All vested participants in the ACCT Holdings, Inc. Employee Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the date of the December 22, 2021 ESOP Transaction through and including December 31, 2025. Excluded from the Class are the shareholders who sold their ACCT stock to the Plan in the ESOP Transaction, directly or indirectly, and their immediate families; the directors and officers of ACCT [at the time of the Transaction] and their immediate families; and legal representatives, successors, and assigns of any such excluded persons." Settlement Agmt. § 1.13. Plaintiffs are participants in the Plan and bring this action on behalf of the Plan and its participants.

Rule 23(a) is easily met as to all claims because the Settlement Class consists of at least 3000 members; the questions of fact and law surrounding Defendants' conduct are the same for all Settlement Class Members; Plaintiffs' claims are typical of the Class; and Plaintiffs and their counsel have and will adequately represent the Class. The Plan was established for the common benefit of all its participants and its assets are held in a common trust. Defendants owed all participants the same duties under ERISA. As detailed in the SAC and further described below, Defendants either breached their fiduciary duties or otherwise violated ERISA as to all Settlement Class Members or to none, and all Class Members suffered the same injuries as a result. And because Plaintiffs' claims are brought on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2), any recovery and relief belongs to the Plan, which ultimately benefits all participants and beneficiaries in the Plan.

A.    **Legal Standards for Class Certification**

A plaintiff seeking class certification must show that the proposed class meets the four requirements of Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy—and one of the subsections of Fed. R. Civ. P. 23(b). *See Marcus v. BMW of North America, LLC*, 687 F.3d 583, 590 (3d Cir. 2012). A plaintiff does not bear a burden of "absolute proof" but, rather, "the preponderance of the evidence standard governs." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 484-85 (3d Cir. 2015). Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

ERISA fiduciary-breach actions under 29 U.S.C. § 1132(a)(2) are frequently certified under Rule 23. *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 136 (3d Cir. 2022); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2011 WL 1303367, at *9 (D. Kan. Apr. 6,

2011) ("[T]he vast majority of courts faced with [ERISA claims against fiduciaries] conclude that [class] certification is appropriate"). That is because suits under § 1132(a)(2) are brought in a representative capacity on behalf of the plan, and thus seek redress for the benefit of the plan, rather than individualized relief. *See Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA,* 72 F.4th 499, 506 (3d Cir.). Indeed, the Third Circuit has held that ERISA "breach of fiduciary duty claims brought under [§ 1132(a)(2)] are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *Boley*, 36 F. 4th at 136 (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)).

Courts across the country thus regularly certify ESOP class actions alleging violations of ERISA's fiduciary standards. *See, e.g., Guidry v. Wilmington Trust*, N.A., 333 F.R.D. 324 (D. Del. 2019) (certifying a class alleging breaches of fiduciary duty and prohibited transaction claims brought by ESOP participants); *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529 (E.D. Pa. 2019) (same); *Hurtado v. Rainbow Disposal Co.*, 2019 WL 1771797, at *11 (C.D. Cal. Apr. 22, 2019) (same)*; Douglin v. GreatBanc Trust Co*., Inc., 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) (finding an ESOP class alleging ERISA fiduciary claims to present a "paradigmatic" example of a Rule 23(b)(1) class; *Godfrey v. GreatBanc Trust Co.*, 2021 WL 679068 (N.D. Ill. Feb. 21, 2021); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506 (W.D. Wis. 2011) (certification under 23(b)(1)(A) & (B), (b)(2)).

## B.    The Proposed Class Satisfies Rule 23(a)'s Requirements

Every class must satisfy the criteria of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Those requirements are met here.

1.    **The numerosity requirement is satisfied because the Class is so numerous that joinder of all Class members is impracticable.**

Rule 23(a)(1) permits class treatment where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, this prong is met if "the potential number of plaintiffs exceeds 40." *Ninivaggi v. Univ. of Delaware*, No. 20-cv-1478-SB, 2023 WL 2734343, at *3 (D. Del. Mar. 31, 2023) (citing *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). Here, the Settlement Class consists of at least 3000 Members. Porter Dec. ¶ 18. The numerosity requirement, therefore, is satisfied.

2.    **The commonality requirement is satisfied because the SAC's overpayment allegations are common to all Class Members.**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." "The bar is not high." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). It "does not require identical claims or facts among class member[s]." *Marcus*, 687 F. 3d at 592-93. "[A] single [common] question" will satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality exists if the plaintiff's claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

Claims that a stock was sold at an incorrect price, such as those at issue here, satisfy the commonality requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001) (finding common questions of law and fact under Rule 23(a)(2) as to the sale of securities at the price offered on the central National Best Bid and Offer system without investigating other, potentially higher prices); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (finding common issues where plaintiff alleged that defendants sold ESOP stock for less

than fair market value); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462–63 (E.D. Pa. 2000) (certifying claim that Ikon stock price had been artificially inflated).

Commonality is also frequently satisfied in ERISA cases arising under 29 U.S.C. § 1132(a)(2), given that the claim is brought on behalf of the plan for relief inuring to the plan. *See Cunningham*, 387 F. Supp. 3d at 539; *Guidry*, 333 F.R.D. at 329 (finding commonality because "[t]he class claims here all depend on the question of whether the ESOP paid an inflated price for" company stock); *see also Nistra v. Reliance Tr. Co.*, No. 16 C 4773, 2018 WL 835341, at *2 (N.D. Ill. Feb. 13, 2018) (finding commonality in ERISA action against trustee arising from ESOP's purchase of private company stock); *Douglin*, 115 F. Supp. 3d at 410 (noting that a defendant's liability for breaching ERISA's fiduciary duties is a common question to all class members because such a breach affects all participants and beneficiaries); *Neil v. Zell*, 275 F.R.D. 256, 260-61 (N.D. Ill. 2011) (finding commonality satisfied where plaintiffs' claims stemmed from the ESOP's purchase of Tribune Company stock).

This case is no different: it is based on a single transaction involving a single security, and involves multiple common questions of law and fact. Those common questions include: (1) whether Defendants were fiduciaries of the Plan under ERISA; (2) whether the ACCT Defendants were parties in interest under ERISA; (3) whether the Trustee Defendants breached their fiduciary duties and caused a prohibited transaction under ERISA by permitting the Plan to purchase ACCT stock from the ACCT Defendants; (4) whether the ACCT Defendants who sat on ACCT's Board of Directors knew or should have known about the prohibited transaction or the Trustee Defendants breaches of fiduciary duty; and (5) the amount of losses suffered by the Plan and its participants as a result of Defendants' ERISA violations.

Proof on each of these issues will necessarily be proof for the entire Settlement Class because the claims center on Defendants' fiduciary obligations to the *Plan* and on prohibited transactions involving the *Plan,* with relief inuring the *Plan*. Put simply, "Plaintiffs' claims do not focus on injuries caused to each individual [ESOP Participant], but rather on how the Defendants' conduct affected the pool of assets that make up the [ESOP]." *Hurtado*, 2019 WL 1771797, at *7 (citation omitted). The commonality requirement is met.

### 3. The typicality requirement is satisfied because Plaintiffs' claims are identical to those of the Class Members.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]ypicality, as with commonality, does not require that all putative class members share identical claims." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531–32 (3d Cir. 2004). Rather, it ensures that "class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough*, 589 F.3d at 597. This analysis sets a "low threshold." as "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal citations and quotations omitted).

In ERISA cases alleging breach of fiduciary duty under 29 U.S.C. § 1132(a)(2), courts frequently find the typicality requirement satisfied because the "action is brought on behalf of the Plan, not the individual participants, so that Plaintiff's claims, of necessity, are typical of the claims of the members of the proposed class." *Lively v. Dynegy, Inc.*, No. 05-CV-00063-MJR, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007); *Pfeifer*, 2018 WL 2057466 at *4 (finding

25

typicality where "Class Representatives' stock was sold at the same price, after the same valuation process, and in the same circumstances as every other Class Member.").

Here, Plaintiffs' claims are typical of the Settlement Class because they assert a single representative action on behalf of the Plan arising from a single transaction involving the Plan's ACCT stock, and seek to recover, for the Plan's benefit, all of the Plan's overpayment losses and other relief on behalf of the Plan as a whole. Defendants thus cannot "distinguish Plaintiffs' circumstances from other ESOP Participants and beneficiaries." *Hurtado*, 2019 WL 1771797, at *8 (typicality established because allegations focus on the conduct of Defendants as to the ESOP as a whole and not on conduct specific to any particular Plaintiff).

### 4.    Plaintiffs are adequate Class representatives.

Rule 23(a)(4) requires that plaintiffs "fairly and adequately protect the interests of the class," meaning that a plaintiff must have the same interests and suffer the same injury as the class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997). This inquiry serves two purposes: "to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012). These requirements are met here.

As to the first requirement, a class representative need only possess "a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (reversing denial of class certification) (internal quotations omitted). Here, the proposed Class Representatives have been actively engaged in the litigation since its inception in November 2024, including by providing documents to counsel used to draft the Complaint and discussing the mediation with counsel. Porter Dec. ¶ 20.

Second, Plaintiffs' interests are aligned with those of the Class Members. There are two questions relevant to whether a conflict of interest exists that precludes adequate representation: (1) whether an intra-class conflict exists, and if so, (2) whether the conflict is "fundamental." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012). "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*. (internal quotations omitted). Here, the named Plaintiffs assert claims on the Plan's behalf for relief inuring to the Plan as a whole stemming from the ESOP's alleged overpayment, and request no individual relief. No Class member benefited from the ESOP's overpayment (as Plaintiffs allege), and any distinctions between Plaintiffs and other Class members are immaterial. Rule 23(a)(4)'s adequacy requirement is met.

### C.    A Class Action May Be Maintained Under Rule 23(b)(1)

In addition to Rule 23(a), a case must satisfy one of the three alternative requirements of Rule 23(b). One of those alternatives, Rules 23(b)(1), is satisfied if "prosecuting separate actions by or against individual class members would create a risk of" either of two scenarios: "(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for the defendants, or "(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). As explained below, both scenarios would be present here absent a class action. Indeed, "[m]ost ERISA class actions are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008); *DiFelice*, 235 F.R.D. at 80 ("given the derivative nature of suits brought pursuant to

§ 502(a)(2) on behalf of the Plan, 'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.").

      1.      **The proposed Class satisfies Rule 23(b)(1)(B) because the interests of absent class members would be affected by individual adjudications.**

Certification under Rule 23(b)(1)(B) is appropriate where "any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). One example of an action ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id*. at 834, n.14. Rule 23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] . . . trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment.

That precisely describes the claims here, which are brought under 29 U.S.C. § 1132(a)(2) in a representative action on behalf of the Plan. "[T]he structure of ERISA favors the principles [of] Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan" and it "structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 2017 WL 5664850, at *17 (S.D.N.Y. Nov. 27, 2017) (quoting *Kindle*, 315 F.R.D. at 12). As another court explained in certifying a class under Rule 23(b)(1)(B), "given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief[.]." *Ikon*, 191 F.R.D. at 466. Indeed, the type of private-company ESOP case of the kind at issue here is often certified under Rule 23(b)(1)(B). *See, e.g., Nistra*, 2018 WL 835341, at *3; *Neil*, 275 F.R.D. at 267-68. A judgment

that Defendants violated ERISA and that the Plan overpaid would naturally apply to the entire

Plan and impact all Class members, with relief inuring to the Plan as a whole.

### 2.      A class action also may be maintained under Rule 23(b)(1)(A).

Rule 23(b)(1)(A) provides that a class may be certified if prosecuting separate actions

would create a risk of inconsistent adjudications that would establish incompatible standards of

conduct for the party opposing the class. Rule 23(b)(1)(A) "takes in cases where the party is

obliged by law to treat the members of the class alike . . . , or where the party must treat all alike

as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (quotation omitted). That precisely

describes cases under ERISA, which "requires plan administrators to treat all similarly situated

participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz.

2008) (citations omitted). For this reason, courts have certified cases involving violations of

ERISA under Rule 23(b)(1)(A). *See Moon v. E.I. du Pont de Nemours & Co.*, No. 19-cv-1856-

SB, 2023 WL 1765565, at *2 (D. Del. Feb. 3, 2023); *Neil*, 275 F.R.D. at 267-68; *Knight v.

Lavine*, No. 1:12-CV-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013); *Chesemore*, 276

F.R.D. at 517. Here, inconsistent adjudications obtained by participants on the fair market value

of ACCT stock as of the ESOP Transaction would make it impossible for the Plan administrator

to treat similarly-situated participants alike. Certification under Rule 23(b)(1)(A) is appropriate.

### D.      Plaintiffs Are Represented by Competent and Qualified Counsel

The adequacy of class counsel is "governed by Rule 23(g)." *Sheinberg v. Sorenson*, 606

F.3d 130, 132 (3d Cir. 2010). Rule 23(g) lays out factors such as (1) the work counsel has done in

identifying or investigating potential claims in the action; (2) counsel's experience handling class

actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's

knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Plaintiffs' counsel in this case are well-qualified ERISA practitioners.

Gregory Porter is a partner with Bailey & Glasser LLP. He has specialized in employee benefits and ERISA litigation since 1998. Porter Dec. ¶ 10. He has served as class counsel or co-counsel in numerous ERISA class actions, including ESOP class actions that proceeded to trial or resulted in settlements for the retirement plan. *Id.* ¶ 11. He also has significant experience in cases involving ERISA fiduciary duties. *Id*. ¶¶ 13-14. Other attorneys involved in this action at Bailey & Glasser's team have also served as class counsel or co-counsel in numerous ERISA class actions, including ESOP class actions. *Id*. ¶¶ 15-17 and Ex. A to Porter Dec.

Peter Stris is a partner with Stris & Maher LLP. For over two decades, he has been representing participants and beneficiaries in high-stakes and high-profile ERISA cases before the Supreme Court and courts of appeals. Stris Dec. ¶ 7. He has also litigated a number of ERISA class actions as co-lead counsel. *Id*. ¶ 14.[2]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order: (a) certifying the Class for settlement purposes and granting preliminary approval of the Settlement Agreement, attached hereto as Exhibit 1; (b) approving the Plan of Allocation, attached hereto as Exhibit 2; (c) approving the proposed Class Notice, attached hereto as Exhibit 3; (d) approving RG2 Claims Administration, LLC as the Settlement Administrator; and (e) setting a date for a Fairness Hearing.

---

[2] The law firms Cohen, Milstein, Sellers, & Toll, PLCC and Major Kahn LLC serve as liaison counsel for Plaintiffs.

DATED: January 5, 2026

Respectfully submitted,

/s/ Jeffrey Hahn
_____

**COHEN, MILSTEIN, SELLERS & TOLL PLLC**
Michelle Yau
Ryan Wheeler
Jacob Schutz
1100 New York Ave., Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
myau@cohenmilstein.com
rwheeler@cohenmilstein.com
jschutz@cohenmilstein.com

**STRIS & MAHER LLP**
Jeffrey M. Hahn (*pro hac vice*)
Peter K. Stris (*pro hac vice)*
Rachel S. Fleischer (*pro hac vice*)
17785 Center Court Dr. N, Suite 600
Cerritos, CA 90703
Telephone: (213) 995-6800
Facsimile: (213) 261-0299
jhahn@stris.com
pstris@stris.com
rfleischer@stris.com

**MKLLC LAW**
Major Khan (*pro hac vice*)
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
Telephone: (212) 389-6111
mk@mk-llc.com

**BAILEY AND GLASSER LLP**
Patricia Mulvoy Kipnis (PA Bar No. 91470)
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Telephone: (215) 274-9420
Facsimile: (202) 463-2103
pkipnis@baileyglasser.com

Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Patrick O. Muench (*pro hac vice*)
Laura E. Babiak (*pro hac vice*)
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (2002) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com
lbabiak@baileyglasser.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of January, 2026, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system. Accordingly, the foregoing is

available for viewing and downloading from the ECF System.


*/s/ Jeffrey Hahn*
Jeffrey Hahn

32